# Noble *et al. v.* Gadsden Land & Improvement Co. *et al.*

*Bill in Equity for the Dissolution of a Corporation and for Distribution of Assets.*

1. *Corporations; right of minority stockholder to maintain bill to distribute assets of corporation.*—When a private business corporation, though solvent, in that it owes no debts, is a failure, and the purposes for which it was organized are impossible of attainment, and its assets are being gradually sacrificed in the payment of taxes and expenses, the minority stockholders of such corporation can maintain a bill in equity to have the corporate assets sold and the proceeds thereof distributed among the stockholders.

2. *Chancery pleading and practice; when not necessary to make all persons interested in the cause parties to suit.*—When the

parties to a cause are numerous or some of them are un-known or beyond the jurisdiction of the court, but they all be-long to a class whose rights are analogous to those of the parties actually before the court, and who fully represent the adverse interest of all, it is not necessary under the rules of chancery practice, (Code, p. 1205, Rule 19, Chancery Prac-tice), in order to the maintenance of a suit in chancery con-cerning the common cause of action,· that all of the parties in interest should be made parties to such suit.,

3. *Same; same; case at bar.*—Where a bill is filed by the minority stockholders in a corporation, seeking to have the assets of the corporation distributed among all the stockholders, and it is averred in the bill that the stockholders of said corpora-tion are numerous, that one-third of the stockholders are non-residents or their residence can not be ascertained, that the respondents are the principal and largest stockholders and fully and fairly represent the adverse interest of all of the stockholders in said corporation, that all of the stockhold-ers belong to the same class and their respective interests are analogous, such bill is not subject to demurrer, upon the ground that all the stockholders are not made parties thereto.

APPEAL from the Chancery Court of Etowah.

Heard before the Hon. R. B. KELLY.

The bill in this case was filed by the appellants, John H. Noble and others, against the Gadsden Land & Improvement Company and several stockholders of said company. The purpose of the bill and the facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

The appeal is prosecuted from a final decree of the chancellor denying the relief prayed for and ordering the bill dismissed for the want of equity; and the ren-dition of this decree is assigned as error.

J. J. WILLETT, for appellants.—The chancery court has inherent jurisdiction to dissolve a private business corporation, which has made a failure of its business, and to distribute its assets at the suit of minority stock-holders, upon the theory that such court will intervene to protect the trust funds which are in danger.—1 Perry on Trusts (5th ed.), p. 360, § 242, note a; *Satterfield v. John*, 53 Ala. 127; *Fort Payne Co. v. Fort Payne Co.*, 96 Ala. 477; 1 Morawetz on Corporations, §§ 239, 240.

[Noble *et al.* v. Gadsden Land & Improvement Co. *et al.*]

It is no objection to the maintenance of such a bill that the corporation has a full board of directors who are competent to manage the affairs of the company.

Directors have no authority to dissolve a corporation or even to distribute its assets. The following authorities are overwhelming to the point that directors can only attend to the usual course of business, and cannot, without the consent or authority of a majority of the stockholders, sell all of the assets of a solvent corporation, and strip it and disqualify it for accomplishing the purpose for which it was organized.—3 Thompson on Corporations, § 3983; *Railway Co. v. Allerton,* 18 Wallace 233; *Elyton Land Co. v. Dowdell,* 113 Ala. 177; 2 Cook on Corporations, (new ed.), § 670; *Abbott v. American Hard Rubber Co.,* 33 Barbour, 578; *Kean v. Johnson,* 9 N. J. Equity, 401; *Baker's Appeal,* 109 Pa. 461; *People v. Ballard,* 134 N. Y. 269; *Middlesex R. R. v. Boston R. R.,* 155 Mass. 347; 7 Am. & Eng. Ency. Law (2d ed.), 734-5.

The averments of the bill in this case were sufficient to give the chancery court jurisdiction and to call for the exercise thereof.—4 Thompson on Corporations, §§ 4443, 4538, 4545; *McKleroy v. Gadsden L. & I. Co.,* 126 Ala. 193; *Fougeray v. Cord,* 50 N. J. Eq. 185; 24 Atl. Rep. 499; *Price v. Holcomb,* 56 N. W. Rep. 407; *Grant v. Furniture Co.,* 26 So. Rep. (La.) 97; *Arents v. Tobacco Co.,* 101 Fed. Rep. 338; *O'Conner v. Hotel Asso.,* 28 S. W. Rep. 308; *State v. Cannon Riv. Corp.,* 69 N. W. Rep. 621; *Slee v. Bloom,* 10 Am. Dec. 273; *Briggs v. Penniman,* 18 Am. Dec. 454; Gluck & Becker on Receivers (2d ed.), 59; 1 Beach on Corporations, §§ 782, 783, 784; 1 Morawetz on Corporations, (2d ed.), §§ 239, 285, 412.

It was unnecessary to make all of the stockholders of the defendant corporation parties to the bill.—Code, p. 1205; *Arents v. Tobacco Co.,* 101 Fed. Rep. 338; 1 Daniel, Chancery Practice (5th ed.), § 190, note 5; Story's Equity Pleading, §§ 99-115; 4 Thompson on Corporations, § 4565; *Weale v. Water Works Co.,* 1 J. & W. 358; *Lebeck v. Ft. Payne,* 115 Ala. 447; *Morton v. Railway Co.,* 79 Ala. 610; *State ex rel v. Webb,* 97 Ala. 111.

WILLIAM H. DENSON, *contra.*—The bill was deficient and subject to demurrer, in that it did not make all the stockholders of the defendant corporation parties thereto.—*McKleroy v. Gadsden L. & I. Co.*, 126 Ala. 193; 2 Cook on Corporations (4th ed.) § 629, and authorities; *George v. Benjamin,* 69 Am. St. Rep. 963.

TYSON, J.—The bill in this cause after amendment is the complaint of three stockholders owning in the aggregate twenty-eight hundred shares of the capital stock of the respondent corporation, and prays to have the corporation dissolved and its assets, which consist of six hundred acres of land, sold and its proceeds distributed among the stockholders, for general relief, etc. The corporation is a private trading one and has a capital of two millions, five hundred thousand dollars ($2,500,000) divided into twenty-five thousand (25,000) shares of the par value of one hundred dollars ($100) each. The purpose of its organization was the building of a town upon the tract of land owned by it. To this end, this land was to be divided into lots, to be sold to those who could be induced to purchase them, and the company was to procure, if possible, the location of industrial enterprises on its lands and thus enhance its value and make salable its lots. In short, it is what is known as a "boom concern." It was organized when the country was rife with speculation; and now that conservatism in financial matters has returned, after a severe experience during the years of financial depression, the company is left with this tract of land, and nothing more, worth probably fifteen or twenty thousand dollars. Fortunately, it has no creditors, and, therefore, no one interested in its affairs, except its stockholders, who are shown to have abandoned the enterprise, leaving it to be managed by its board of directors as best they can. For five years, its president and secretary have made diligent efforts to have the stockholders meet. Many of them are non-residents of this State, and those who are residents, decline to attend the meetings when called, after being notified and urged to do so. There are three hundred and forty-five of them, and the whereabouts of one-third of the

number is unknown and unascertainable, and the remaining two-thirds have lost all concern or interest in the affairs of the company. The fixed charges which the corporation is bound to meet annually, in the way of taxes, licenses, etc., is between six and seven hundred dollars. Its income annually is only about fifty dollars. So that, each year a portion of its tract of land is sold by the State, county and city of Gadsden to pay these charges. It is wholly without credit and its assets are being sacrificed, the corporation, on account of the abandonment of it by the holders of the majority of its stock, being powerless to prevent it.

It is upon substantially the foregoing state of facts, which is shown both by the averments of the bill and the testimony, that the complainants seek relief.

On final hearing the chancellor dismissed the bill for want of equity, holding that, in the absence of a statute, the chancery court is without jurisdiction to dissolve the corporation and to distribute its assets at the suit of a minority stockholder.

Where the corporation is a going concern, it is undoubtedly true that a minority stockholder cannot maintain a bill to have it dissolved or to have its assets distributed. In such case, the shareholders who disapprove of the company's management or consider their speculation a bad one, their remedy is to elect new officers or to sell their shares and withdraw. "They cannot insist on having the company's business closed and the assets distributed, against the will of a single shareholder, who wishes to have the business continued."—1 Morawetz on Corp. § 283. But where the corporation has been abandoned by its stockholders, as here, and is, therefore, powerless to protect its assets and to discharge its duty to the stockholders as their trustee, minority stockholders who are *cestuis que trust*, if the chancery court has no jurisdiction to rescue the trust fund from the perils endangering its destruction, would be remediless. No efforts of theirs to have their trustee sell the lands and distribute its proceeds could avail them, for the obvious reason, that it would require the consent of the holders of a majority of the stock to thus strip the corporation of its assets, which

is shown in this case cannot be obtained, not because of their unwillingness to give it, but on account of their lack of interest in the company. Clearly its directors cannot do so, the corporation not being insolvent. They are merely the managing agents of the business of the corporation, to promote the ends designed by its charter and do not possess such power or authority.—*Elyton Land Co. v. Dowdell*, 113 Ala. 186; 3 Thompson on Corporations, § 3983; 1 Morawetz on Corp. § 513; 2 Cook on Corp. (4th ed.), § 670. These complainants desiring, as they do, to have this trust fund protected and administered so as they may get their part of it, have in our opinion, under the facts of this case, the right to maintain this bill to have the lands sold and its proceeds distributed among the stockholders. On former appeal (*McKleroy v. Gadsden Land & Improvement Co.*, 126 Ala. 193), we said: "It is held in *Planters Line v. Waganer*, 71 Ala. 581, that a private corporation, entered into solely for benefit of the shareholders, and involving no public duty, may be dissolved by the stockholders; and on the same principle, when the purpose of such an association is a failure, we quite agree with Mr. Thompson that there should be in the chancery court an inherent power to administer the property so as to restore to the *cestuis que trust* (the stockholders) their ultimate interest.—4 Thomp. on Corp. [§§ 4443, 4538,] § 4545; *Fougeray v. Cord*, 50 N. J. Eq. 185; *Price v. Holcomb* (Iowa), 56 N. W. Rep. 407." In 1 Morawetz on Corp., section 284, it is said: "Whenever, in the course of events, it proves impossible to attain the real objects for which a corporation was formed, or when the failure of the company has become inevitable, it is the duty of the company's agents to put an end to its operations and to wind up its affairs. Under these circumstances, the majority would have no right to continue to use the common property and credit for any purpose, because it would be impossible to use them for any purpose authorized by the charter. If the majority should attempt to continue the company's operations in violation of the charter, or should refuse to make a distribution of the assets, any shareholder feeling aggrieved would be en-

[Noble *et al.* v. Gadsden Land & Improvement Co. *et al.*]

titled to the assistance of the courts and a decree should be made ordering the directors to wind up the company's business and distribute the assets among those who are equitably entitled." See also section 412 of same book.

In 2 Beach on Corp., section .783, the author says: "Unless it appears beyond question, that the continuation of a profitable business cannot be had, the dissolution of a corporation not yet insolvent will not be decreed upon petition of a minority of its shareholders. If, however, it is clear that the business cannot be profitably continued, the petition of a minority for a dissolution will be granted."

Spelling, in his work on Corporations, states the rule in substance to be, that the court would, in case the scheme was impossible, not allow the funds to be diverted to other purposes, but would enjoin such diversion at the suit of a stockholder and as incidental give full relief by decreeing a settlement of the corporate liability and a distribution of the remainder among the stockholders.

In *Price v. Holcomb, supra,* the Supreme Court of Iowa, notwithstanding the provisions of a statute that "No corporation can be dissolved prior to the period fixed in the articles of incorporation, except by unanimous consent, unless a different rule has been adopted in their articles," held that "if a sale of the property was necessary the right to make it would not be defeated even if it had the effect of dissolving the corporation."

The case of *O'Connor v. Knoxville Hotel Association* (Tenn.), 28 S. W. Rep. 309, in its facts, is very similar to the one in hand. The bill was filed by a single stockholder against the corporation and other stockholders in which the facts alleged showed an abandonment of the enterprise and the original scheme to be impossible of consummation, and prayed for a distribution of the assets of the company. It was insisted there, as here, that the bill was without equity. The court after reviewing the authorities held the bill had equity and that the complainant was entitled to relief on common law grounds.

Other authorities might be quoted to sustain the right of the complainants to the exercise of the jurisdiction of the court to have the assets of the respondent corporation distributed.     See also *Arents v. Blackwell's Durham Tobacco Co.*, 101 Fed. Rep. 345; *Cramer v. Bird*, L. R. 6 Eq. 143; *Baring v. Dix*, 1 Cox, 213; 1 Perry on Trusts (5th ed.), § 242, and note a.

While the authorities are not in accord as to the right of the courts, in a proper case, to dissolve the corporation, they are practically unanimous, so far as our research has extended, in sustaining the right of the complainants, under the facts of this case, to have the assets of the corporation distributed, which may be done under the orders and directions of the court through the agents of the corporation.   And while the writer is inclined to the view that the court has the jurisdiction to dissolve the corporation, yet it is not necessary to go to that extent, as the rights of the complainants can be fully subserved by the court's administration of the trust estate through the agents of the corporation.

The other question, though not passed upon by the chancellor, but raised by demurrer, is that all the stockholders are not made parties to the bill.   Of the total shares—twenty-five thousand (25,000)—of the capital stock, nine thousand eight hundred and ninety-nine (9,899) are owned and held by the parties to this cause.   Of this latter number, seven thousand and ninety-nine (7,099) shares are held and owned by the thirteen (13) respondents to the bill.   As stated above, one-third of the stock is held by persons whose residences cannot be ascertained and who reside in all parts of this country.   The respondents are, it is averred, the principal and largest stockholders and fully and fairly represent the adverse interest of all the stockholders in the corporation; that all the stockholders belong to the same class, and their respective interests are analogous.   It is also averred that it would be impossible to ever bring the cause to a final hearing, if complainants are required to make all the stockholders parties; and such a requirement would result in inconvenience, oppressive delays and a consumption of

a large part of the assets of the company in court costs. It is clear to us that these averments bring the case under the operation of the provision of Rule 19 of Chancery Practice.—Code, p. 1205. In *Morton v. N. O. & Selma R'y. Co.,* 79 Ala. 610, speaking to this point, the court said: "The rule is, that when the parties to a cause are numerous, or some of them are unknown or beyond the jurisdiction of the court, so as not to be subject to its process, but they all belong to a class whose rights are analogous to those of parties actually before the court, because dependent on the same principles of law, the court will often proceed to adjudge the rights of the class as such, and, in the absence of all collusion, the decree will be considered binding upon the whole class who are in a like situation. * * * This rule is fully recognized by Rule No. 20 [now No. 19] of our Chancery Practice, which makes it discretionary with the chancellor, in such case, to dispense with bringing before him all the interested parties, and provides that the court may proceed in the cause without making such persons parties, provided it has sufficient parties before it to represent all the adverse interests of the plaintiff and the defendant in the suit. Nor is it repugnant to the concluding provision found in the same rule, declaring that 'the decree shall be without prejudice to the rights and claims of the absent parties.' * * * This, as we shall proceed to show, is the right to come in under the decree, and not antagonistic to what is properly settled by it." See also *Sanche v. Webb,* 97 Ala. 111; *Campbell v. Railroad Co.,* 1 Wood, 368.

The decree dismissing the bill for want of equity will be reversed and the cause remanded, with directions to the lower court to enter a decree ordering a sale of the land for distribution, and for such other orders or decrees as may be necessary to an equitable and orderly administration of the trust estate.

Reversed and remanded.