# Central Land Co., *et al. v.* Sullivan.

*Bill to Wind Up Corporation.*

(Decided July 2, 1907. 44 South. 644.)

1. *Corporations; Proceedings to Wind Up; Pleading.*—A bill by a minority stockholder to wind up and distribute the assets of a cor

[Central Land Co., et al. v. Sullivan.]

poration because not a going concern, which avers that no meeting has been held in five years; that no officer or agent resided in the state, and that the business for which the corporation was organized had never been attemptd, sufficiently shows an abandonment by the stockholders of the enterprise.

2. *Same; Grounds for Dissolution.*—A minority stockholder may maintain a bill to wind up a corporation and distribute its assets where the stockholders have not had a meeting for five years, and there is no officer or agent in the state, and the corporation has not attempted to carry out the purposes for which it was chartered, and the property is gradually deteriorating in value and will soon be in a condition where a part of the corpus must be sacrificed annually to pay the taxes and prevent the improvements from deteriorating; although the fact that the corporation is not earning dividends, is not grounds upon which such bill could be maintained.

3. *Same; Necessity for Demand.*—It is not necessary that a demand should be made upon the managing officers of a corporation by a minority stockholder before he can maintain a bill to wind up the corporation affairs and distribute the assets, where it appears that the corporation has failed to carry out the purposes for which it was chartered and its property is deteriorating in value, and its income only paying fixed charges, etc., even though no complaint can be made against the managing officers respecting its condition.

4. *Equity; Pleading; Multifariousness.*—As all the parties have a common interest in the subject matter of the suit there is nothing inconsistent in ordering a distribution of the corporate assets and at the same time determining the validity of the shares of stock, so as to arrive at the interest each shareholder has in the proceeds of the sale of the property; and hence, a bill by a minority stockholder seeking a distribution of the corporate assets and to have two-thirds of the shares of the stock declared fictitious and void, is not multifariousness.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Bill by C. B. Sullivan, trustee, against Central Land Company of Birmingham and others. From a decree overruling demurrers to the bill and a motion to dismiss, defendants appeal. Affirmed.

This bill is exhibited by C. B. Sullivan, as trustee under a deed of assignment made by M. Tabler, against the Central Land Company of Birmingham, a corporation, and the stockholders thereof. Tabler owned 12 shares of the stock of said corporation, which shares are conveyed in the deed of assignment made for the benefit of his creditors. The purpose of the bill is to have the prop-

erty of the corporation sold and the proceeds distributed among the several owners of the stock of the concern. The corporation was organized on the 9th day of February, 1887, under the general laws of Alabama. Its general purpose and the nature of the business proposed was to buy, sell and lease land; to improve such land as it might acquire by surveying and laying off the same into lots, parks, alleys, and streets; to loan, invest, or reinvest any of its moneys or effects, etc. In short, it was to be, as its name imports, a land company, buying, selling, and improving real estate, and plotting it into ground lots. The bill shows that its capital stock was fixed at $240,000, all of which was subscribed for, and it is alleged that according to the report of the commissioners all of said stock was paid for in full by the subscribers and certificates of shares were issued to them in proportion to the amount subscribed. It further appears from the allegations of the bill that, after the payment into the treasury of the corporation of the subscription to the capital stock, the company purchased from one Harvey, one of the incorporators, for a recited consideration of $240,000, certain real estate in the extreme western limits of the city of Birmingham. It is alleged that the real consideration paid for said real estate was $80,000. It is also averred that Harvey purchased said real estate from the Birmingham Rolling Mills for $80,000; that in making said purchase he acted as the agent of the incorporators of the Central Land Company, and paid for the same with the money of the subscribers to the capital stock of the said corporation, and the conveyance of the real estate by Harvey to the corporation was made to pay the subscription to the capital stock; that said stock was issued by said corporation largely in excess of the value of said property; and that such excessive issue of stock was made without con-

[Central Land Co., et al. v. Sullivan.]

sideration and is void. It is then averred that said real estate is the only property ever acquired by the said Central Land Company; that the land has on it a number of small tenement houses, which for many years have been inhabited by negroes who work in the furnaces and mills near by; that the said corporation has never transacted any business, except to collect the rent from said tenement houses when the same were rented, to pay the taxes on the property, and keep the houses in partial repair. It is then expressly averred that for the past 15 years the corporation has ceased to carry on any business, except as above stated, that the corporation has no officer or agent residing in the state of Alabama, and that for more than 5 years last past it has failed to hold a meeting of its stockholders and transact the business for which it was organized. It is then alleged that the corporation has ceased to be a going concern; that, while it owes no debts, the rents and income from its property are barely sufficient to pay the taxes on the same, the insurance on the houses, and the necessary repairs, and that this condition of the affairs of the corporation has existed for many years; that the stockholders have received no dividend of any importance, except when, a few years ago, a number of the houses on the property were destroyed by fire, and the insurance on them was collected and distributed among the stockholders. It is averred that the property was purchased during a time when prices for real estate were inflated; that the shareholders, in organizing the corporation and purchasing the real estate, had in mind a plan to sell the same at a great profit to themselves, but that the purpose failed entirely; that the boom during which the purchase was made collapsed, and the value of the land so decreased that they have never been worth to the incorporators the amount paid for them, and the great sum of money

[Central Land Co., et al. v. Sullivan.]

which they subscribed with which to purchase said land has for nearly 20 years yielded practically no income. It is further alleged that the stock has no market price, and that it cannot be disposed of at all in the market. It is averred that the fixed charges which the corporation has to meet annually amount to about $750, not including the compensation of its officers, and that the income of the corporation is approximately the same as the fixed charges, and that it arises from rental of the negro tenement houses on the land, which are alleged to be small, cheap tenement houses, about 20 years old, and are rapidly decaying. It is alleged that in a short time the income of said property or corporation will not be sufficient to pay the taxes, repairs, and agent's commission for looking after the same. Demurrers were filed to the bill, and motion made to dismiss it for want of equity; the nature and character of which sufficiently appear in the opinion. From a decree overruling the demurrers and motion to dismiss, this appeal is prosecuted.

TOMLINSON & McCULLOUGH, for appellant.—Where a corporation is a going concern a minority stockholder cannot maintain a bill or to have its assets distributed. Their remedy is to elect officers or sell their shares and withdraw.—*Noble, et al. v. Gadsden L. & I. Co.*, 133 Ala. 254.

S. D. & J. B. WEAKLEY, for appellee.—The court properly overruled the demurrers.—*Noble v. Gadsden L. & I. Imp. Co.*, 133 Ala. 250; Note to 91 Am. St. Rep. p. 33-35, and cases there cited.

DENSON, J.—In *Noble v. Gadsden Land & Improvement Co.*, 133 Ala. 250, 31 South. 856, 91 Am. St. Rep. 27, it is held that where a private business corporation,

though solvent, in that it owes no debts, is a failure, and the purposes for which it was organized are impossible of attainment, and its assets are being gradually sacrificed in the payment of taxes and expenses, the minority stockholders of such corporation can maintain a bill in equity to have the corporate assets sold and the proceeds thereof distributed among the stockholders. The only difference between that case and the one in hand is that there the income of the corporation, at the time the bill was filed, was not sufficient to pay expenses, taxes, etc., and annually a portion of its land was sold on that account, and it was shown that the corporation was without credit and its assets were being sacrificed, the corporation, on account of the abandonment of it by the holders of the majority of its stock, being powerless to prevent it; while here it does not appear that any of the property of the corporation has been sacrificed, or even sold, to meet expenses, but the income is alleged to be the same as the outgo. Nevertheless it does appear from the bill in this case that the property from which income is derived is gradually deteriorating in value, and that in a short while the income will not be sufficient to meet the expenses. This being true, the inevitable result will be that, if the corporation continues, it will be in the same condition in this respect as was the one in the case cited.

The averments of the bill are sufficient to show an abandonment of their duties by the stockholders. No meeting has been held within the past five years, and no officer or agent of the corporation resides in the state and the business for which the corporation was organized has never been attempted. Mr. Beach, in his work on Corporations, at section 783, says: "Unless it appears beyond question that the continuation of a profitable business cannot be had, the dissolution of a cor-

[Central Land Co., et al. v. Sullivan.]

poration not yet insolvent will not be decreed upon petition of a minority of its sharehilders. If, however, it is clear that the business cannot be profitably continued, the petition of a minority for a dissolution will be granted." This quotation from Beach is cited in the case supra approvingly. It would seem that no argument is necessary, in support of the averments of the bill, to show that the business of the corporation, not only cannot be profitably continued, but, if continued, it must soon be at a loss and sacrifice. "A recognized ground of relief in equity is when the affairs of the corporation are not satisfactory and further prosecution of its business will lead to loss and insolvency."—*Treadwell v. Mfg. Co.,* 7 Gray (Mass.) 393, 66 Am. Dec. 490; *Arents v. Blackwell's Durham Tobacco Co.,* (C. C.) 101 Fed. 338, 346. It is well said in the case, cited from 7 Gray (Mass.) 393: "Public policy does not require a private corporation to go on at a loss. On the contrary, it would seem very clear for the public welfare, as well as for the interest of stockholders, that they should cease to transact business as soon as, in the exercise of sound judgment, it is found that in cannot be prudently continued. If this be not so, we do not see that any limit could be put on the business of a trading corporation short of the entire loss or destruction of its property." It is true- that merely because a corporation, while pursuing the purpose of its organiation, is not earning dividends, is not ground upon which a minority stockholder may have its effects distributed; yet, when the corporation has not (as is here averred) attempted to carry out the purposes for which it was chartered, when it has failed of the purposes and the objects of its creation, when the shareholders have not for five years held a meeting and have no officer or agent in the state, when the property is graudually deteriorating in value

[Central Land Co., et al. v. Sullivan.]

and will soon be in a condition where a part of the corpus must be annually sacrificed to meet taxes, insurance, etc., the authorities fully support the proposition that a minority stockholder of such a corporation, whether it be solvent or insolvent, may maintain a bill to distribute its assets amongst those equitably entitled thereto.—Authorities supra, and also the following: *Ross v. American Banaa Co.,* 150 Ala. 268, 43 South. 817; *Ulmer v. Maine Real Estate Co.,* 93 Me. 325, 45 Atl. 40.

No complaint is made in the bill against the managing officers of the corporation in respect to the condition of its affairs. Indeed, the officers may have acted in the utmost good faith, and yet, notwithstanding, the condition of affairs averred could naturally have followed. Therefore a demand on the officers for a distribution is not necessary; and the board of directors would be powerless to take any action in respect to the property of the corporation such as is prayed. And if it can be said that, in a bill to distribute the property of a corporation, it is ever necessary to show a demand for action on the part of stockholders, and a refusal or failure on their part to act, we think the averments of the bill are sufficient to exempt it from the ground of demurrer raising this point.

It is insisted that the bill is multifarious, in that it seeks a distribution of the assets of the estate and to have declared that two-thirds of the stock is fictitious and void. The averment that the stock is fictitious is not essential to the equity of the bill, in respect to having the property sold and the proceeds distributed; but, according to the averments of the bill, that which makes the issuance of stock fictitious affects every share of stock that was issued. In other words, the shareholders contributed $80,000 for the purchase of the only prop-

erty that the corporation owned, and which formed its capital and was bought at this price, whereas the deed to the corporation recited $240,000 as the consideration paid, and certificates of stock were issued to each shareholder on the basis of $240,000 as the capitalization. So all the parties have a common interest touching the subject-matter of the suit, and there is nothing inconsistent in the court's ordering the sale and distribution of the property, and at the same time determining the validity of the shares of stock, and therefore the interest each shareholder has in the proceeds of the sale of the property. The objection that the bill is multifarious is without merit.

The demurrers to the bill were properly overruled, and the decree of the chancellor must be affirmed.

Affirmed.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.