(81 South. 555)
MILLER et al. v. HERZBERG et al.
(7 Div. 990.)

(Supreme Court of Alabama. April 17, 1919.)

1. CORPORATIONS ⟐382—CORPORATE POWERS—LAND COMPANIES—PURPOSES.

The business of a land company cannot be limited to the accomplishment of a specific enterprise, which is merely one manifestation of the corporate purpose, though its promoters centered their initial efforts upon the development of a particular tract for building lots.

2. CORPORATIONS ⟐601—DISSOLUTION IN RECEIVERSHIP—LAND COMPANY—FAILURE OF ONE ENTERPRISE.

The fact that a land company planned and expected to market most of its lots before the ending of a "boom," and failed to do so, does not necessarily show "a failure of the object of the corporation" in any legal or business sense, or entitle minority stockholders to receivership and dissolution.

3. CORPORATIONS ⟐605—FAILURE OF PURPOSE—MINORITY STOCKHOLDERS' PROCEEDING FOR DISSOLUTION—TEMPORARY SUSPENSION OF LAND CORPORATION'S BUSINESS.

The mere suspension of a land company's business of improving streets and selling lots during a period of industrial disturbance and depression does not constitute an abandonment of the corporate purpose, or demonstrate a failure of even a part of the corporate activities, or justify dissolution proceedings by minority stockholders.

4. EVIDENCE ⟐11—JUDICIAL NOTICE—PERIOD OF DEPRESSION FOLLOWING WAR.

The court will take judicial knowledge of the period overshadowed by the moral depression and the industrial disturbance which followed the great European War.

5. CORPORATIONS ⟐614(4)—DISSOLUTION BY STOCKHOLDERS' PROCEEDING—BILL—SUFFICIENCY.

In minority stockholders' proceeding for dissolution of a land company, a bill held insufficient to show that there had been an abandonment, either of the corporation or of its busi-

ness, or that the charter objects of the corporation had failed in any legal sense, or that the pursuit of its objects had been completely abandoned, or that their attainment had become impossible.

6. CORPORATIONS ⟐614(4)—COMPLAINT FOR DISSOLUTION—SUFFICIENCY—DIMINUTION OF ASSETS.

A minority stockholders' bill for dissolution of a land company, making no showing as to fixed expenses other than annual taxes, and charging only in general terms a gradual diminution of corporate assets, and not showing that conditions are now or will be unfavorable for profitable resumption of scheme of platting and selling lots, held insufficient.

7. CORPORATIONS ⟐601—DISSOLUTION—ASSETS—CASH RESERVE.

A land corporation, whose scheme of selling lots was arrested by financial depression, but which carried no indebtedness, with assets of $30,000 to $40,000, is not subject to forcible dissolution at minority stockholders' suit, because its cash reserve is less than its corporate needs.

8. CORPORATIONS ⟐605—FORCIBLE DISSOLUTION—INSOLVENCY STATUTE.

Code 1907, § 3512, authorizing dissolution of corporation and distribution of assets whenever it shall become insolvent, or suspend its ordinary business for lack of necessary funds, does not apply to a land corporation, with sufficient assets and credits to carry on its business, which was merely suspended because of a temporary financial depression.

9. CORPORATIONS ⟐614(5)—FORCIBLE DISSOLUTION—IMPOSSIBILITY OF EXECUTION OF PURPOSE—EVIDENCE.

Whether a corporation's purpose be one impossible of execution, so that it may be terminated, is not to be determined by the weight of the evidence, but must be a certainty as things are deemed a certainty in law.

Appeal from Circuit Court, Etowah County; J. E. Blackwood, Judge.

Bill by L. L. Herzberg and others against J. C. Miller and others to dissolve the corporation known as the Gadsden Realty Company, for a receiver pending the proceedings and for a sale of the property. Decree for complainants and respondents appeal. Reversed, rendered, and remanded.

The bill is filed by minority stockholders of the common and preferred stock of the Gadsden Realty Company. The bill as amended shows as follows: That the Gadsden Realty Company was organized under the laws of Alabama on April 24, 1906, with an issue of $104,000 of common and $26,000 of cumulative preferred capital stock, the latter class being preferred both as to earnings and assets of the corporation. The declared object of the corporation as shown by its charter was: (a) To conduct, maintain, and carry on a general realty business; (b)

to own, buy, sell, lease, and rent to or from other persons, hold, occupy, exchange real estate of every description, personal property, choses in action, and all kinds of property, real, personal, and mixed; (c) to improve real estate, erect houses, or cause them to be erected, and to rent and lease to and from other persons; (d) to sell, rent, and lease real estate, houses, and lots on commission, and to lend money and take security therefor. One Phipps, a promoter of the company, had acquired options on 471 acres of surburban land, lying just west of the city of Gadsden and south of the plant of the Southern Steel Company, to be purchased for $25,020, and when the company was soon after organized this property was valued at $130,000, and its purchase and conveyance to the company was the sole consideration for the issue of said common and preferred stock. The preferred stock subscriptions at par paid for the land, and the balance, $980, was placed in the treasury. Two shares of the common stock were issued as a bonus with each share of the preferred stock. The chief object and purpose of the corporation was the platting and subdividing of said land into town lots, blocks, streets, and avenues, and the rapid sale of said lots by said corporation while the "boom" conditions then prevalent were still existent. Immediately after organization, a part of said land was thus plotted and subdivided, and within two years about 100 lots were sold at from $100 to $300 each, but thereafter there was practically no demand for the lots. Only 68 lots, 10 acres of land, were actually paid for and conveyed to the purchasers from April 24, 1906, to May 22, 1911, mostly in the first two years. After May, 1911, up till more than a year before this bill was filed, only 10 lots, less than 3 acres of land, were sold at prices from $50 to $150 each, and prior to May, 1911, the company donated 50 lots to the Southern Steel Company. Since organization, beside the $980 in the treasury, the company has received money as follows: $2,850 for rent of farmhouses on the land; $900 for timber sold therefrom; and about $13,250 for lots sold. It has acquired no additional property as assets, and now has only the remainder of its lands, about 425 acres, and $856.23 in money. The rest of its liquid assets have been expended in the improvement of its land, expenses of operation and taxes, except one 3 per cent. dividend, amounting to $1,560 paid on the preferred stock within the first two years. A large part of the land has never been laid off into lots and streets, and the lots, streets, and alleys that were established were never properly improved, and to now make them useful would require an expenditure of several hundred dollars. To lay off and improve the rest of the property would require an expenditure of several thousand dollars, which is necessary to make the lots salable, if they could be sold at all. The six farmhouses on the land have been rented from time to time, but have been allowed to fall into decay, so that no further income can be obtained from them. Since the beginning of the year of 1908 the expenses of the conduct of the corporation and its affairs, including taxes, have exhausted the income of the corporation from the sources enumerated. From its organization until now it has never engaged in any other business or enterprise than that of buying these lands, subdividing them and selling lots, and for a year or more prior to the filing of this bill it had wholly ceased to do that, and was merely collecting such rents as it could, and paying its taxes and other necessary expenses out of the funds thus derived. It is charged, therefore, that the object of the corporation failed with the collapse of the "boom" after the panic of 1907, and that it has been compelled to suspend its ordinary business for lack of funds to carry it on for a year or more prior to the filing of this bill.

Culli & Martin, of Gadsden, for appellants.
O. R. Hood, of Gadsden, for appellees.

SOMERVILLE, J. The bill of complaint shows that the respondent corporation, the Gadsden Realty Company, began its corporate existence in April, 1906, with assets consisting of 471 acres of suburban lands, on which were six tenantable farmhouses and some valuable timber. The specific enterprise in the contemplation and plans of its management was the development of these lands for a residential district, the "boom" conditions of that period creating a demand for building lots for an inflowing population, which promised a profitable business for the company in that line.

A beginning was made by platting a part of the lands, improving the streets, and selling off about 100 lots. Then followed the financial panic and industrial depression of 1907, after which there was practically no demand for these lots, and down to November 14, 1916, when this suit was filed, only about 10 additional lots had been sold.

It appears, therefore, that the net result of ten years of corporate activity or existence has been to leave the company just where it started, except that it now has about 420 acres of these lands, instead of 471, minus its timber, worth about $900, and with its six farmhouses, more or less decayed and untenantable, and has $856 in cash assets instead of $980.

On the other hand, it has expended some thousands of dollars in platting a part of the lands, and laying out and improving streets, which, though out of repair, may be made serviceable by the expenditure of a few hundred dollars.

Upon this basis of facts, and upon the further fact that no lots have been sold or improvements made for a year or two prior to November, 1916, the major conclusion of the bill is grounded, viz. that the object of the corporation has failed, both because it has been abandoned and because it has become impossible of attainment.

[1-4] As was remarked in the recent case of Phinizy v. Anniston City Land Co., 195 Ala. 656, 662, 71 South. 469, 472:

"The business of a land company is obviously different in important particulars from most other commercial enterprises."

The object of corporate organization must be found in the declaration of the corporate charter. It cannot be limited to the accomplishment of any specific enterprise, which is merely one manifestation of the corporate purpose. The fact that the promoters of this corporation centered their initial efforts upon the development of a particular tract of land for building lots did not make the successful pursuit of that enterprise the sine qua non of continued corporate existence. Nor did the fact that they planned and expected to market the bulk of their lots before the exuberance of "boom" times had subsided make the failure to do so "a failure of the object of the corporation" in any legal or business sense. Nor, again, did the mere suspension of the business of improving streets and selling lots during a period which, as we judicially know, was overshadowed by the moral depression and industrial disturbance which followed in the wake of the great European War constitute an abandonment, or demonstrate a failure, of even this particular phase of corporate activity. Such a suspension, in the face of conditions which, it may be, were only temporarily unfavorable, may have been dictated by considerations of the soundest business policy.

To buy, own, and hold real estate was as much the chartered object of this corporation as to improve and sell it. Selling real estate, which has been bought and is held for profit, is not like selling merchandise. It is not necessarily either continuous or contemporaneous. It is not expected that it will be thrown upon a dull market at a sacrifice, but rather that it will be held until an active demand for it has arisen or can be created, whether in a few months or in many years.

[5] We think the bill wholly fails to show that there has been an abandonment either of the corporation or of its business, or that the chartered objects of the corporation have failed in any legal sense. Certainly this is in accord with the authorities, which all hold that the objects of a corporation have failed only when their pursuit has been completely abandoned, or their attainment has become impossible. Noble v. Gadsden Land, etc., Co., 133 Ala. 250, 31 South. 856, 91 Am. St. Rep. 27, and note; Phinizy v. Anniston, etc., Co., 195 Ala. 656, 71 South. 469, and cases therein cited.

[6] The bill of complaint makes no showing whatever as to the fixed expenses of the corporation, other than its annual taxes, and does no more than to charge in general terms a gradual diminution of its assets. It does not show that conditions are now unfavorable, or will be unfavorable in the future, for a profitable resumption of the corporate scheme of platting and selling lots. It may very well be that the country at large, and the city of Gadsden in particular, are on the eve of such industrial development, and commercial prosperity as will permit and promote the speedy realization of this particular scheme. On this vital subject the bill offers not even a prognostication.

[7] The only definite suggestion made in support of this theory of the bill is that further pursuit of the scheme is impossible, because to develop the remainder of the lands would require the expenditure of several thousand dollars, whereas the corporation has in available cash something less than a thousand.

It must be remarked, however, that the corporation is practically as strong financially as it was when it began business in 1906. Moreover, it does not appear that it carries a dollar of indebtedness, nor that its assets—which are estimated at $30,000 to $40,000 in value—do not supply an ample basis of credit for financing its future operations. Obviously, it would not do to say that every corporation becomes subject to forcible dissolution at the suit of a minority stockholder whenever its cash reserve becomes less than its corporate needs.

We have recently reviewed and restated the principles of law which govern cases like this in the case of Phinizy v. Anniston, etc., Co., supra. The case made by the bill here exhibited falls far short of meeting the requirements of the law, and was subject to the demurrer for want of equity, which should have been sustained.

[8] Nor can section 3512 of the Code be construed as applicable to this corporation on the facts alleged. The statute authorizes the dissolution of a corporation and the distribution of its assets whenever it "shall become insolvent, or shall suspend ordinary business for the lack of funds to carry on the same." The latter alternative contemplates a corporation which has not only ceased to do business, but is also financially incapacitated to continue it in the future. As we have pointed out heretofore, the mere suspension of land sales by a land company, without a complete abandonment of purpose to do so at some future time, is not a sus-

pension of business within the meaning of the statute. Nor is a temporary deficiency of cash needed for operating expenses, by a solvent corporation, a "lack of funds" within the meaning of the statute, so long as its assets may supply a ready basis for needed financing. In short, section 3512 of the Code is intended to apply either to corporations actually insolvent, or to derelicts so financially embarrassed by debt or exhaustion of assets as to be incapable of soon resuming their business "with safety to the public and advantage to the stockholders."

[9] In the case of Central Land Co. v. Sullivan, 152 Ala. 360, 44 South. 644, 15 Ann. Cas. 420, relief was granted to a minority stockholder on the ground that there was a failure of the purposes and objects for which the corporation was created, as evidenced by the fact that it had never "attempted to carry out the purposes for which it was chartered," and the further fact that it had no officer or agent in this state where its property was located, and there had not been held any stockholders' meeting for five years. That case is therefore without any persuasive value here.

Each case must be considered with reference to its own peculiar facts; and, while courts will not hesitate to grant relief in proper cases, they will not disregard the controlling consideration:

"Whether the corporation's purpose be one impossible of execution, so that it may be terminated at the complaint of any stockholder, is not a matter to be determined by the weight of the evidence. It must be a certainty, as things are deemed to be certain in law." Phinizy v. Anniston City Land Co., 195 Ala. 662, 71 South. 471, supra.

The decree overruling the demurrer to the bill of complaint will be reversed, and a decree will be here rendered sustaining the demurrer for want of equity in the bill.

Reversed, rendered, and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.