# The Chicago and Allegheny Oil and Mining Company *et al.* *versus* The United States Petroleum Company.

1. An agreement to lease land for a term of years, with the exclusive right to bore for and collect oil, giving one-fourth to the lessor: *Held*, to pass a corporeal interest.

2. The taking by the lessee of his share of the oil found is not waste, but a rightful act, unless the lease be forfeited by its own terms.

3. The appointment of a receiver is the exercise of a power in aid of a proceeding in equity, and is the subject of sound discretion. The court must be convinced that it is needful and is the appropriate means to a proper end. It is a strong measure and cannot be exercised doubtingly.

4. Where a party has title and possession under a lease in writing, enjoying rights apparently legal, a receiver will not be appointed unless under urgent and peculiar circumstances. The plaintiff must show a clear right or a primâ facie right, with such circumstances of danger or probable loss as will move the conscience of a chancellor to interfere.

January 9th 1868.     Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.     STRONG, J., at Nisi Prius.

Appeal from the decree of the Court of Nisi Prius. In equity.

This proceeding was a bill in equity, filed April 25th 1866, by the Chicago and Allegheny Oil and Mining Company, the Garden City Petroleum and Mining Company, H. H. Honore and Samuel J. Walker, against the United States Petroleum Company.

The proceeding was founded on the following instrument:—

" Articles of agreement made, &c., the 16th day of March A. D. 1864 between Thomas Holmden, &c., of the first part, and James Faulkner, Jr., &c., of the second part: Witnesseth that for and in consideration of the covenants, agreements and reservations hereinafter mentioned, and of the sum of $1, &c., the party of

the first part hereby covenants and agrees to lease to the party of the second part, his heirs and assigns, all his right, title, interest and claim in and to all that certain piece or parcel of land lying and being in Cornplanter township, Venango county, and state of Pennsylvania, known and described as follows, to wit: Commencing, &c. * * * containing 150 acres, be the same more or less.

"The said party of the second part to have the sole and exclusive right to bore or dig for oil on said lands, and gather and collect the same therefrom, for the term of twenty years from the date hereof, upon the following terms and conditions, to wit: To give to said Thomas Holmden, his heirs and assigns, one-fourth, or twenty-five gallons, out of every one hundred gallons of all the oil that may be obtained from said lands, said oil to be delivered in barrels (the party of the first part to furnish barrels for his proportion of the oil) at the warehouses of the party of the first part wherever, on the said tract of land, the said warehouses may be located, said delivery of oil to take place as often as once in twenty days, and the time of such delivery to be fixed by the party of the first part; and the said party of the second part also to haul, free of expense, the empty barrels required from said warehouses to the wells, and said oil to be delivered free and clear of water.

"The party of the second part further covenants and agrees to sell no oil until it is divided as aforesaid, nor to barrel nor divide any without notice to the party of the first part, or his agents, heirs or assigns; and at all times to permit the party of the first part, or his agent, to enter the premises for the purpose of inspecting the operations, of examining the books and of ascertaining how much oil is being obtained, to pay all taxes that may be assessed on said lands during the continuance of this lease, to commence within one hundred and twenty days from the date hereof to dig or bore for oil on said lands, and to continue with due diligence to prosecute the business to success or abandonment, and does moreover agree that if the said party of the second part shall cease to operate for oil then this lease, and the rights hereby granted, shall be null and void, and the party of the first part shall resume possession of the premises."

"It is further agreed that if the said party of the second part fail to get oil and abandon the premises, he may be at liberty to remove any machinery he may have placed thereon. It is expressly agreed between the parties to this instrument, that the party of the second part shall confine his operations or searches for oil to the bottom lands of said tract, and shall not enter upon and occupy the uplands without the consent of the party of the first part, said party of the first part reserving the uplands for agricultural purposes, also reserving the privilege of erecting

buildings on said uplands and the privilege of selling lots on said uplands, subject to the conditions of this lease.

"The party of the first part further covenants and agrees that the party of the second part shall have the sole and exclusive right to mine for coal, iron-ore and all other minerals, which may be obtained on said lands, upon terms and conditions which may hereafter be agreed upon.

"It is moreover expressly agreed by and between the parties to this instrument, that a failure of the said party of the second part to comply with any one of the reservations, conditions or agreements contained in the within instrument, which by its terms are to be done, observed, kept and performed by the said party of the second part, shall work a forfeiture of the rights hereby granted, and the party of the first part, his heirs and assigns, may re-enter upon said lands and dispose of the same as effectually as if this lease had not been made, unless such failure occurred through some unavoidable necessity."

The bill set out the agreement that all Holmden's interest in the land and in the rights reserved under the agreement had been vested in the plaintiffs by several conveyances, the last being dated January 1st 1866, and that the rights of Faulkner under the agreement had vested in the defendants. The bill averred that the defendants have bored for oil on the land, and by themselves, or their sublessees, sunk not less than 100 wells, from which the defendants, since the 4th of September 1865, had obtained not less than from 340,000 to 350,000 barrels of oil. The bill averred that, by the vesting of the fee simple of the lands, together with Holmden's rights in them, the defendants, under the agreement, were bound to deliver to the plaintiffs, in barrels to be furnished by the plaintiffs, the one-fourth of the oil once in twenty days, and not to sell any oil until divided, the oil delivered to be clear and free from water, and failure by the defendants to comply with any of the conditions, &c., worked a forfeiture, "unless such failure occurred through some unavoidable necessity." The bill charged that the defendants had not delivered the plaintiff's oil at least once in twenty days, and the oil had not been delivered clear and free from water; that they had sold large quantities before making a division, without sending any, or if any, a false account to the plaintiffs; that they had sold not less than 5000 barrels, for which they had rendered no account, and refused to render an account; that they had permitted their sublessees to sell and use large quantities of oil without accounting to the plaintiffs for it; that they had furnished fraudulent accounts to the United States revenue officers, thus subjecting all the oil to danger of confiscation; that the defendants had rendered fraudulent accounts, and refused to attend for division of the oil, although duly notified, and that the failures did not occur through

[C. and A. Oil and Mining Co. *v.* U. S. Petroleum Co.]

unavoidable necessity, and in other respects had not kept their covenants; that the plaintiffs had notified the defendants that in consequence of the said failures they had revoked the rights of the defendants, &c., and claimed possession, which had been refused.

The prayer was for a decree of forfeiture; for. a receiver of the oil to which the defendants claimed to be entitled; an injunction restraining the defendants from exercising their rights under the agreement, and for general relief.

The defendants filed an answer, September 14th 1866, averring that they had permitted the plaintiffs at all times to inspect the operations, examine the books, and ascertain the amount of oil; that they had been at all times ready to give the plaintiffs one-fourth of the oil, and had delivered a large quantity in accordance with the stipulations of the agreement; that if the whole quantity due plaintiffs had not been delivered it had been because plaintiffs had refused to deliver barrels, as they should have done. The answer denied that they had sold or barrelled any oil until after division or notice to the plaintiffs; it admitted that sales without a division had been made, but it was through unavoidable necessity, caused by the plaintiffs' neglect to perform the conditions binding on them; it denied that defendants had not complied with their covenants, as set out in the bill; it averred that the oil delivered was free from water in the sense in which the term is used at oil wells, and that they had equitably performed and were willing to perform all their covenants, &c.

On the 2d of November 1866 the plaintiffs filed an amended bill, setting out as in the original bill, and further averring that they had commenced an action of ejectment in Venango county to recover the premises mentioned in the agreement, by reason of the forfeiture heretofore set forth, and brought this bill in aid of that suit; they prayed that an account might be taken of all the oil taken since the plaintiffs' rights had accrued, and for a receiver for the oil to which the defendants claimed they were entitled; for an injunction to restrain the defendants from taking oil, &c., and for general relief.

By agreement of November 27th 1866, the plaintiffs had leave to withdraw so much of the bill as prayed for an account, and the defendants had leave to file a supplemental answer before December 8th 1866.

The supplemental answer was filed December 6th 1866. It averred: that the defendants had permitted the plaintiffs (called "the land interest") always to enter the premises to inspect the operations, examine the books, &c., and for that purpose allowed them to erect and occupy, rent free, an office opposite the defendants'; that they had been always, and were now, ready to give the plaintiffs one-fourth of the oil at the times and places stipulated;

[C. and A. Oil and Mining Co. *v.* U. S. Petroleum Co.]

that they were not notified until April 9th 1866 that the plaintiffs were owners of the land interest, but had supposed that it had continued in some of their predecessors in title, who had always expressed themselves satisfied with the acts of the defendants in the matters complained of; that before the plaintiffs acquired their interest, a regular system had been established with "the land interest" for their mutual benefit, which practically, but not in principle, somewhat modified the mode of paying the royalty, viz., tri-monthly examinations were made of the amount from each well, and that in tanks, which was then divided into fourths, for the land interest, the working interest and the lessees. The oil was seldom removed by the owners, but by purchasers on orders from the owners, and it was removed irregularly at different times, in different amounts and on account of different interests. The accounts were kept separately for each well and each interest: periodical accounts were rendered to plaintiffs which were received and acted on by them; that by an account prepared by defendants it appeared that the plaintiffs had received several thousand barrels of oil more than they were entitled to. The answer also stated circumstances incident to the business of obtaining oil, in view of which the agreement should be construed, and the conduct of plaintiffs in failing to perform their stipulations for promptly receiving and removing their oil, as subjecting the defendants to risk and loss, and averred that they, the defendants, never claimed to deliver oil at any particular place or from any particular tank, but were always ready to fill and had filled all the plaintiffs' orders, the holders of which never complained of the place of delivery. The answer averred that if oil had been sold prior to division, it was with the plaintiff's assent and from unavoidable necessity, which compelled them to dispose of the oil or stop the works and permit the tanks to overflow; the other denials and averments were the same· as in the answer to the original bill.

A cross bill (in which the defendants in these bills were plaintiffs) was filed November 24th 1866 against these plaintiffs, averring acts which it alleged amounted to an eviction, and prayed the court to decree that said eviction was a sufficient bar to the proceedings in equity and to the action of ejectment, and for an injunction restraining them from proceeding in either; and from collecting any royalty under the lease for repayment of all royalty paid since the eviction, for an account and for general relief. The defendants in the cross bill (plaintiffs in the other bills) denied its allegations, and prayed for the dismissal of the bill.

The cross bill and answer are not referred to in the opinion of the Supreme Court, and are therefore not further noticed.

A large amount of testimony was taken by various examiners,

[C. and A. Oil and Mining Co. *v.* U. S. Petroleum Co.]

and on the 8th of June 1867 the case was referred to David W. Sellers, Esq., master, "to find the facts, the law and a decree."

The master found that the habitual mode of division and delivery of the oil had been, that defendants informed the plaintiffs of the amount of oil on hand, that the plaintiffs gave orders for the amount due them, which were accepted by the defendants; the master held that it was immaterial if barrels occasionally were not filled according to the letter of the agreement. He found that the "land interest" never established a warehouse in which to receive their one-fourth in barrels; had never received the rent as a whole, but that each owner received his share. The master found that there was an habitual division and delivery as above stated; that there was no wilful breach by the defendants of their covenants, and that a refusal to deliver in *barrels* would not work a forfeiture. The master found what books the defendants kept; that they were kept with honesty and accuracy; that such books as were properly subject to the inspection of the "land interest" were not withheld, and that there was no breach of the covenant in relation to inspection of the books.

The master reported that as the prayer for an account had been withdrawn, it was not necessary to determine whether there had been a full delivery of the plaintiff's share of the oil; but found that a failure to deliver one-fiftieth of the amount due (about which amount there was evidence the deliveries to the plaintiffs were short), would not work a forfeiture.

The master reported other findings, whose statement is not necessary to an understanding of the case and its decision.

He finally found that there had been no wilful breach of any of the covenants which incurred forfeiture, and reported that the prayer for a receiver and injunction be denied, and that the costs be divided.

Both parties filed exceptions, which were dismissed by the court and the master's report confirmed.

The plaintiffs appealed, and assigned the confirmation of the report for error.

*S. G. Thompson* and *Meredith* for appellants.—The interest created by the agreement was incorporeal: Funk *v.* Haldeman, 3 P. F. Smith 229; Dark *v.* Johnson, 5 Id. 164. Courts of Equity have jurisdiction in all cases of discovery in aid of actions at law: U. S. Bank *v.* Biddle, 2 Pars. R. 53; Miller *v.* McCann, 7 Paige 460; Grundin *v.* Lee, 2 Id. 509; Hawley *v.* Cramer, 4 Cowen 727; Rathbone *v.* Warren, 10 Johns. R. 595. The defendants have lost their right of possession by breach of conditions; their mining is trespass or waste; if waste, the plaintiffs are entitled to an injunction: Spear *v.* Cutter, 5 Barb. S. C. 488; Windship *v.* Pitts, 3 Paige 261; Hawley *v.* Clawes, 2 Johns.

[C. and A. Oil and Mining Co. v. U. S. Petroleum Co.]

Ch. 1; Hanson v. Gardiner, 7 Ves. 305; Kane v. Vandenburg, 1 Johns. Ch.; Watson v. Hunter, 5 Id. 171; Livingston v. Livingston, 6 Id. 169; Smith v. Cook, 3 Atkins 381; Denny v. Brunson, 5 Casey 385; Irwin v. Covode, 12 Harris 162; 2 Eden on Injunc. 1; Brown v. O'Brien, 4 Pa. L. J. 459; Jerome v. Ross, 7 Johns. Ch. 315; Thomas v. Oakley, 18 Ves. 184; Courthope v. Mapplesden, 10 Id. 290; Shubrick v. Guerhard, 2 Desausure 616.

A receiver should be appointed: 3 Dan. Chan. Pr. 406, 413.

*W. H. Rawle* and *J. Fallon* (with whom was *A. A. Outerbridge*), for appellees.—A court of equity will not aid to enforce a forfeiture: Peachy v. Somerset, 1 Strange 447 (3 Lead. C. in Eq. 895); Funk v. Haldeman, supra; Livingston v. Tompkins, 4 Johns. Ch. 433; 1 Mitford's Eq. Pl. 186–198; Wigram on Discovery, § 130; 1 Maddock's Ch. Pr. 173-4; 2 Story's Eq. Jur., § 1494; Hills v. Oxford, 1 Vern. 275; Wrottesley v. Bendish, 3 P. Wms. 238. Forfeiture was waived by the receipt of rent: Jackson v. Sheldon, 5 Cow. 448; Clark v. Jones, 1 Denio 518; Goodright v. Davids, Cowp. 803.

A party will not be allowed to try in equity what he has begun at law, when his remedy there is full and complete: Reeves v. Cooper, 1 Beasley Ch. (N. J.) 223, 498; 3 Dan. Ch. Pr. 1726, n.

A receiver will not be appointed or injunction granted in this case, because defendants are in lawful possession under the plaintiffs: Lloyd v. Passingham, 16 Ves. 70; Stuyvesant v. Davis, 9 Paige 427; Davis v. Moss, 2 Wright 354. And because a receiver is asked for but a portion of the property: 2 Dan. Ch. Pr. 1406; Davis v. Marlborough, 2 Swanston 125; Iddings v. Bowen, 4 Sandf. Ch. 417; Edwards on Receivers, ch. 1.

A decree for receiver cannot be had under a prayer for general relief: 1 Eden on Injunc. 74; Horton's Appeal, 1 Harris 67; Del. and Hudson Can. v. Penna. Coal Co., 9 Id. 146.

The estate of defendants is a leasehold, not a license: Commyn v. Kincto, Cro. J. 150; Turner v. Reynolds, 11 Harris 199; Funk v. Haldeman, supra; Caldwell v. Fulton, 7 Casey 482; Harlan v. Lehigh C. & Nav. Co., 11 Id. 287; Clement v. Youngman, 4 Wright 344; Dark v. Johnson, supra; Moore v. Miller, 8 Barr 283; Mitchel v. Com'th., 1 Wright 187; Doe v. Wood, 2 B. & Ald. 726.

The opinion of the court was delivered, January 20th 1868, by AGNEW, J.—The original bill in this case prayed for a decree of forfeiture of the lease held by the defendants, and for the appointment of a receiver for the lessee's share of the oil. The amended bill avers breaches of the covenant in the lease, and a

[C. and A. Oil and Mining Co. *v.* U. S. Petroleum Co.]

forfeiture thereby, states that an action at law has been brought to enforce the forfeiture, and that this bill is in aid thereof, and then prays for an account of all the oil, and for the appointment of a receiver as before, and in the mean time that the defendants shall be restrained from taking and disposing of any oil obtained upon the land. The prayer for an account being withdrawn, the relief prayed for is the appointment of a receiver of the defendants' portion of the oil and an injunction to restrain the defendants in the mean time, that is, until the suit at law is determined.

The agreement of 16th March 1864, is manifestly a lease for years of the corporeal tenement, with an added exclusive right to bore for, obtain and take the oil found, returning as rent one-fourth of the product to the lessor. To obtain and take the lessee's share of the oil is not waste, but a rightful act under the lease, unless it be forfeited by its own terms. The defendants are in the peaceable possession of their own term, and have at a vast expenditure of money and labor of themselves and their sublessees fitted up the premises and procured the oil, and have regularly delivered to the plaintiffs their share in payment of the rent, except certain limited quantities, small in comparison with the entire product, which are fairly the subjects of doubt and controversy, and have been for the most part found by the master in favor of the defendants. It is also noticeable that when this lease was made it was unknown to what extent oil would be obtained, and clearly without any anticipation of the immense flow which afterwards occurred. More than one hundred wells have been bored, one of which yielded the enormous quantity of seventeen hundred barrels in a single day, while the aggregate quantity is stated in the bill at three hundred and forty thousand barrels. If we reflect upon the utter impossibility of procuring the barrels, filling and hauling them away, the immense amount and extraordinary flow of this most subtle and inflammable product, wholly unanticipated at the time of the contract, we discover at once that the parties themselves were compelled to abandon the literal terms of the lease, and to resort to expedients and substitutes in lieu thereof. Thus we cannot avoid perceiving that the alleged breaches are of exceedingly doubtful character, depending upon an attentive consideration of the facts to be inquired into in the suit at law. The master, upon a careful examination of the evidence, having resolved these matters of doubt favorably to the defendants, we cannot say there is any well-grounded presumption that a forfeiture has occurred. Possibly it may have taken place, but under the circumstances we are by no means convinced of the forfeiture. Without it there can be no waste, and the tenant's appropriation of his own share is rightful.

What, then, are we called upon to do? Simply to appoint a receiver to take into custody and to deprive the lessee of his share

[C. and A. Oil and Mining Co. *v.* U. S. Petroleum Co.]

of the product until the plaintiffs can see whether they will be successful in obtaining a judgment of forfeiture in a doubtful case. No receiver is asked for the landlord's portion, and plainly because as to it the purpose is to require delivery without interruption. The actual purpose is to take into custody that which will be mesne profits in the event of establishing the forfeiture. Look at the case in any direction, and all that is in it is to obtain our assistance in giving effect to an alleged forfeiture, and to restrain the defendants from the exercise of their legal rights under the lease, while the plaintiffs are engaged in experimenting at law for the forfeiture. It is not for the protection of a clear and well-defined right, and to prevent an irremediable injury which may ensue if we do not intervene, nor is it the ordinary case of one who shows an equitable right in the subject of custody, and asks the court to interfere for its security until the termination of litigation.

The appointment of a receiver is the exercise of a power in aid of a proceeding in equity, and is the subject of sound discretion. The court must be convinced that it is needful and is the appropriate means of securing a proper end. Such an appointment is a strong measure, and not to be exercised doubtingly. Where a party is clothed with title and possession such as are conferred by a lease in writing, and is in the enjoyment of rights apparently legal, a receiver will not be appointed unless under urgent and peculiar circumstances. The plaintiff must show a clear right in such a case, or a primâ facie, with such attending circumstances of danger or probable loss as will move the conscience of a chancellor to interfere.

Finding no such elements in this case the bill is dismissed, and the costs ordered to be paid by the plaintiffs.