## Hall, Appellant, *v.* City Park Brewing Co.

128

Argued May 15, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Owen J. Roberts,* with him *Marc Billet* and *C. Russell Phillips,* for appellant.—Insolvency is not a necessary condition to the appointment of a receiver: Cunliffe v. Consumers Assn., 280 Pa. 263.

Where a corporation has abandoned its purposes or where they have become impossible, a liquidating receiver will be appointed at the request of a minority stockholder: Schipper Bros. Coal Mining Co. v. Coal Co., 277 Pa. 356; Treat v. Ins. Co., 203 Pa. 21.

A corporation is a "going concern" even though its assets are less than its liabilities, "if it be still prosecuting its line of business, with the prospect and expectation of continuing to do so": Garland v. Wilson, 289 Pa. 272.

*Fred. W. Breitinger,* with him *Fred'k L. Breitinger,* for appellee.—The manner in which appellee managed its corporate affairs was lawful and does not warrant the appointment of a receiver: Hlawati v. Maeder-Hlawati Co., 289 Pa. 233.

The temporary cessation of manufacture is not an abandonment of corporate purpose: Shaaber's App., 2

Monaghan 435; Taylor v. Hoag, 273 Pa. 194; Whyte v. Faust, 281 Pa. 444.

The holding of real estate for sale is not a change of corporate purpose: Whyte v. Faust, 281 Pa. 444; Ardesca Oil Co. v. Oil & Mining Co., 66 Pa. 375; D., L. & W. Ry. v. Welser, 233 Pa. 154; Leazure v. Hillegas, 7 S. & R. 313; Seifert v. Rusch, 269 Pa. 53; Watts's App., 78 Pa. 370.

It is pertinent to note that laches can well be imputed to plaintiff: Bacon v. Wagon Co., 13 Pa. Dist. R. 16.

OPINION BY MR. JUSTICE KEPHART, June 30, 1928:

Appellee was incorporated for the purpose of manufacturing and selling malt and malt liquors, and dealing generally in real and personal estate necessary for the successful prosecution of that business. After the adoption of the Eighteenth Amendment and the passage of the Volstead Act in October, 1919, the company endeavored to manufacture and sell malt beverages which conformed to the provisions of the law, but the effort met with a heavy financial loss and the enterprise proved a failure. It then attempted to manufacture malt extracts. A separate corporation was organized for that purpose, all of the stock being owned by appellee; this also resulted in a further loss, and, in 1923, the directors decided to cease all corporate efforts. Since that time, the only business transacted has been the collection of accounts due, and the sale from time to time of real estate not connected with the main brewing plant. The company has distributed to its stockholders up to 1926 various sums out of surplus, which had accrued prior to 1913. Efforts have been made by the directors to sell the corporate assets, but they have been unavailing. Appellant, a minority stockholder, at the annual meeting in 1926, presented a resolution which, if adopted, would have forced a liquidation of the company. This was not approved by the majority. The present bill was then filed. It averred that the business

of the company had been prohibited by the Constitution of the United States and by law, and the company could not fulfill its corporate duties for which it was incorporated; that the machinery and equipment had become obsolete, and had deteriorated and depreciated in value; and that the carrying charges of the real estate were steadily increasing; that the majority of the stockholders with the directors have refused to wind up its business or distribute the assets, and intend to keep it in being, though the company cannot legally transact the business for which it was incorporated. Appellant asked that a receiver be appointed to turn the assets into cash and make distribution among the stockholders.

Defendant, in its answer, did not deny the material averments, but asserted that the suspension of business was not permanent, but was to continue until the Volstead Act would be so modified as to permit the brewing of beer which, while not in fact intoxicating nor contrary to the Eighteenth Amendment to the Constitution of the United States, would contain a higher alcoholic content, making it a potable malt liquor and profitable to manufacture. It also averred that since 1923 it has distributed $870,000, paying one dividend on October 11, 1926, of $150,000; that the liquidation has proceeded in an orderly manner, consistent with safety and reasonable dispatch; that the price set by the directors, $1,500,000, for the property is not unreasonable, and may eventually be obtained; while heavy losses were occasioned by obsolescence, this took place in 1918 and 1919, shortly after the war; though the brewing business has ceased, the corporation continues to function, conducting its corporate affairs in a lawful manner, collecting its loans, which were reduced from $433,890 in 1922 to $248,500 in 1926, and leasing its property; the greater part of its real estate holdings of sixty-two parcels owned after the war has been sold, and the remainder has increased in value; it has held directors and stockholders meetings regularly, and appellant has participated in

all its actions, both as to the distribution of its property and the conduct of its business; and that the company has reserved the means and ability to pursue its corporate purposes when made lawful, and there is no danger or risk of loss inasmuch as the income exceeds any possible expenditures. The court below found the facts to be substantially as outlined in bill and answer, except that it found the rise in value of the real estate far exceeded any possible carrying charges. Upon these findings, the learned chancellor declined to appoint a receiver, but retained jurisdiction of the bill so that appellant, under proper circumstances, could renew the application in the future. This appeal followed.

The prayer of this bill is for the appointment of a receiver to liquidate a solvent corporation that is unable to carry on the business for which it was incorporated because of the adoption of the Eighteenth Amendment to the federal Constitution and the passage of the Volstead Act. The bill does not pray for dissolution of the company, but it is obvious that, if the purposes of the bill are carried out, there will be nothing left but the shell of corporate franchise. We have discussed at some length, in the case of McDougal v. Huntingdon & Broad Top Mountain R. & C. Co., 294 Pa. 108, filed this day, the underlying principles controlling the jurisdiction of the court to appoint a receiver.

The case in hand presents four questions for determination: (1) whether a court of equity has jurisdiction to appoint a receiver to distribute the assets of a corporation or wind up its affairs; (2) if so, do the facts here presented constitute sufficient ground for the appointment of a receiver; (3) is appellant barred by acquiescence or laches; (4) the propriety of the decree of the court below in retaining jurisdiction of the bill.

If we treat the proceeding as a bill for dissolution, the courts of many states hold that, in the absence of a statute, equity is without power to decree dissolution and a distribution of assets to wind up corporate

affairs for any reason: 4 Pomeroy's Equity Jurisprudence 3615, section 1540; Fletcher's Cyclopedia of Corporations, section 5530; 14a C. J. 1087, section 3679. A complete summary of the cases on this subject may be found in 43 A. L. R. 288. The general rule above stated is not unchallenged; it represents the view of earlier cases and some recent ones, but the majority of the later decisions have modified this rule by stating that, ordinarily, a court of equity will not appoint a receiver to wind up the affairs of a corporation in the absence of a statute, even though it is based on fraud, mismanagement or dissension. The reason for withholding the relief in such case, in addition to want of power, is that the remedy,—winding up the corporate affairs and distributing the assets,—is very drastic. As representing the opposite view, a large number of cases hold that equity has jurisdiction to wind up the affairs of a corporation on the ground of fraud, mismanagement or dissension. The reason given is that the powers of a court of equity have been enlarged for the purpose of more fully protecting the rights of those owning minority interests. Even with the hesitancy to assume jurisdiction for these reasons, many of the earlier cases recognized the rule that, where there is a failure of corporate purposes, or where inevitable ruin will follow corporate acts, the affairs of a solvent corporation may be wound up at the instance of a stockholder through the appointment of a receiver: 43 A. L. R. 296. In many of the cases cited on page 305, the corporations had ceased to do business.

It is the clear implication of our decision in Schipper Bros. Coal Mining Co. v. Economy Domestic Coal Co., 277 Pa. 356, that our courts have jurisdiction, in a proper case, to appoint a receiver to wind up the affairs of a corporation, and the effect of that case is not modified by Hlawati v. Maeder-Hlawati Co., 289 Pa. 233, decided on the ground that the facts of that particular case did not afford sufficient reason for the interference

of the court. This last case does not hold as a fixed rule that receivers cannot be so appointed, but states the general proposition laid down by the writers. The subject is discussed by Fletcher in his Cyclopedia of Corporations in the following passage (section 5255): "Minority stockholders may have a corporation wound up where it plainly appears that the object for which the company was formed is impossible of attainment, and in such case a receiver ordinarily may be appointed to wind up the business." See also 1 Morawetz on Private Corporations (2d ed.) 268, section 284; Thompson on Corporations, 3d ed., section 6457. This rule has been recognized in several jurisdictions: Sellman v. German Union Fire Ins. Co., 184 Fed. 977; Noble v. Gadstone Land Imp. Co., 133 Ala. 250, 31 So. 856; Ross v. American Banana Co., 150 Ala. 268, 43 So. 817; Minona Portland Cement Co. v. Reese, 167 Ala. 485, 52 So. 523; Decatur Land Co. v. Robinson, 184 Ala. 322, 63 So. 522; Jones v. Henderson, 210 Ala. 614, 98 So. 878; Ulmer v. Main Real Estate Co., 93 Me. 324, 45 Atl. 40; Benedict v. Col. Construction Co., 49 N. J. Eq. 23, 23 Atl. 485. Although it makes no difference whether the corporation is solvent or insolvent (Central Land Co. v. Sullivan, 152 Ala. 360, 44 So. 644; Ross v. American Banana Co., supra), it must appear either that the corporation, where it is a going concern, is facing inevitable ruin (Phinizy v. Anniston City Land Co., 195 Ala. 656, 71 So. 469) or that the primary purpose of the corporation has become impossible of attainment: see cases cited above. This court has also recognized the jurisdiction of a court of equity to appoint a receiver for a proposed corporation which was never fully incorporated: Garland v. Wilson, 289 Pa. 272.

The Act of April 9, 1856, P. L. 293, with amendments and supplements, provides the manner in which a corporation may be dissolved,—that is, by the act of the majority, through the court: Easton Transit Co.'s Petition, 270 Pa. 136; Com. v. Alliance Petroleum & Coal Co., 53

Pa. 71. This does not curtail the powers given to courts of equity, nor prevent them from correcting manifest abuses, unlawful practices or unfair acts of corporate officers and majority stockholders, even if the result of such action be the virtual winding up of corporate business. Because of the magnitude and growth of corporate enterprises, chancery powers have been enlarged so as to more fully protect the interest of all its members. The larger part of the business of the world is being conducted through the medium of corporations; these bodies, which early belonged to the business world almost exclusively, now represent every phase of life. It is for this reason that there should be a change in the old rule as to the jurisdiction of courts of equity, especially where minority stockholders are suffering. In construing the obligations and duties of those having control of corporations, it is necessary that a rule be adopted that will bring the corporate majority acting through its officers or as individuals into closer and more effective touch with lawful restraint, correction and enforcement of right through the courts. The affairs of the company must be conducted for the purposes for which it was created,—the prosecution of its business, the preservation of its property, and the protection of the rights and claims of those interested. If, in this State, it fails in all of these, a court of equity may step in, and,—under the power conferred by the Act of 1836, with the inherent powers of chancery,—prevent the majority from deliberately withholding a division of its property. Especially must this be so where the law takes from the corporation the right to function for the purposes named. We therefore hold, as intimated above, that a receiver in a proper case may be appointed in aid of a legal right of the petitioner to distribute the assets of a corporation that has ceased to function because the power was taken from it, or which is unable to attain the object of incorporation.

While clause 12, section 39, of the Act of 1874, gives to corporations the power to acquire and dispose of real estate as ancillary to its main purpose (Malone v. Lancaster Gas & Light Co., 182 Pa. 309; Brown v. Winnisimmet, 93 Mass. 326), when the main purposes cease to exist by operation of law, such auxiliary powers cease with it. The excuse that the company expected a change in the law will not aid appellee. Equity deals with the law as it is found, not as it may be changed. The first question is, therefore, answered in the affirmative.

As to the question whether or not there were sufficient grounds presented for the appointment of a receiver, and whether appellee is barred by acquiescence and laches, a different answer must be given. In 1 Morawetz on Private Corporations, section 238, it is stated that a court of equity has the power to order the affairs of a corporation wound up and assets distributed where the corporate purpose has become impossible of attainment, and, if the officers of the corporation fail to do this on their own motion, a decree should be made ordering such distribution. The implication is that the officers should be allowed reasonable time for voluntary liquidation. The court should, as far as possible, avoid a forced liquidation, especially of a concern of this size, and allow the officers reasonable time within which to accomplish it. It is true almost ten years have elapsed since it became evident that the appellee must liquidate, but its officers and managers are not to be criticized for this. Appellant himself participated in this action, aiding them in every step, and seeming to be content to wait until favorable opportunity presented itself. But his former acquiescence and joinder in the work of liquidation does not mean that he will be compelled to wait until the majority sees fit to act. He can come in and ask the court, as he has done, to force liquidation of the assets. This being the first attempt to require liquidation, the officers should be given reasonable time from the date the bill was filed within which to accomplish that purpose, with-

out sacrificing unnecessarily the company's property. If they do not act within a reasonable period, the court may protect the interests of the minority stockholders such as plaintiff. What is reasonable time is largely within the discretion of the court below, considering the property on hand, the condition of the market, and the availability of buyers.

Under the circumstances, the decree of the court below, refusing to grant immediate relief but retaining jurisdiction of the bill, was proper: See Gilmore v. Gilmore Drug Co., 279 Pa. 193, and Hlawati v. Maeder-Hlawati Co., supra. If, after the expiration of a reasonable time, the majority stockholders and directors fail to take any active steps to liquidate the business, plaintiff may renew his request for the appointment of a receiver, or the court may, of its own motion, after notice and hearing, grant relief.

Decree affirmed at cost of appellant.