## Waddell v. Trostel

600

*John Wills Beach,* for plaintiff.
*Henry O. Heiser,* for defendant.

SPICER, *P.J.,* November 12, 1982—Plaintiff brings this equity action to compel retransfer of corporate stock and to dissolve a closely-held family corporation. Preliminary objections have been filed.

From facts averred in the complaint, the following facts emerge.

Richard B. Trostel is the father of the other individual parties. We have, therefore, a father and two sons as defendants and a daughter as plaintiff. The father owned 1175 shares in the corporation before June 1, 1982, and plaintiff (Jane) owned 604 shares. Donald Trostel (Donald) owned 617 shares and Richard Barry Trostel (Barry) owned 604 shares prior to the June date. No other shares were issued.

The parties executed a shareholders' agreement March 31, 1975. This agreement referred to the father as the majority shareholder, apparently meaning that he owned more shares than any other single shareholder. Obviously, he did not own more than half, since his holdings were as we have already described.

In the agreement's recitals, it was stated that "the parties desire that Donald and Jane shall have the right to purchase the interests of father and of Barry in company upon the death of father. . . ." Barry was

described as not "actively participating in" the operation of the corporate business. Both Donald and Jane were described as full-time employees.

There is nothing in the complaint to indicate whether Jane still is a full-time employee or, if not, when the employment ceased.

The agreement provided means by which its stated purpose was to be accomplished. The father assigned a life insurance policy to Jane and Donald. Upon the father's death, these two children were to collect the insurance proceeds and to use them to purchase the father's stock. Any surplus was to be used to pay for Barry's stock. There were provisions establishing means of determining price and financing arrangements.

Jane and Donald were to purchase the stock in equal amounts.

The agreement also provided, in Paragraph 6:

"Each of the shareholders agree not to sell, transfer, pledge, assign or otherwise in any way dispose of any of his or her shares except to another shareholder or other shareholders unless and until he or she shall have offered to sell his or her shares to the other shareholders at a price to be determined as provided in Paragraph 12. All share certificates registered in the name shareholders or hereafter issued by company shall have the following noted conspicuously thereon:

" 'The sale, transfer, pledge, assignment or encumbrance of the shares represented by this certificate is restricted by and subject to the terms of a shareholders' agreement dated March 31, 1975, a copy of which agreement is on file in the principal office of the corporation.' "

And in Paragraph 13:

"This agreement shall terminate upon the occurrence of any of the following events:

"A. Cessation of company's business.

"B. Bankruptcy, receivership or dissolution of company.

"C. Failure of Donald and Jane to maintain in force the insurance policy/policies referred to in Paragraph 1, or any exercise of the rights of ownership of said policy/policies which is inconsistent with the terms or purposes of this agreement, provided father serves notice of termination upon them.

"D. Voluntary or involuntary withdrawal of Donald or Jane's husband from the business of company."

Another provision gave the father the right to repurchase the life insurance policy for the cash surrender value upon termination of the agreement.

Plaintiff avers that her father violated the agreement by transferring, on June 1, 1982, all of his shares to Donald without notice and without giving her an opportunity to acquire an equal share. She further states that her father and Donald induced her to assign the life insurance policy to an unnamed person for no consideration by falsely telling her that papers she was executing "were mere formalities only and did not affect any of her rights."

Plaintiff and her family enjoyed use of a house and cabin owned by the corporation prior to the transfer by father. Her husband was employed by the corporation. She made improvements to the house and built a cabin, thinking that she could rely upon the agreement and because of promises made by her father.

After the transfer of stock, she and her family were excluded from the company property and her husband's employment was involuntarily terminated.

Plaintiff contends that she is entitled to the relief she seeks. She argues that her allegations are sufficient to overcome demurrers filed by defendants.

Defendants argue that the father's rights to transfer as he did are clearly established in Paragraph 6 and that plaintiff has not alleged facts which would justify equity's involvement in this case.

Plaintiff's requested relief for specific performance is that this court require Donald to retransfer the stock to the father and to require the father then to offer stock to "each of the shareholders pursuant to Paragraph 9," and that the insurance policy be reassigned to reinvest her rights therein.

Plaintiff cites the case of Frickert v. Dieter Brothers Fuel Co., Inc., 464 Pa. 596, 347 A.2d 701 (1975), as support for her position. Defendants counter by pointing out that express language in the contract permitted the action taken in this case. They cite such authority as Robert F. Felte, Inc. v. White, 451 Pa. 137, 302 A.2d 347 (1973), and the clear-language rule discussed therein.

We think an analysis of Dieter, supra, might be helpful. Two brothers were the sole shareholders of a close corporation. They executed an agreement providing that transfer of stock could only be accomplished in accordance with the terms of the agreement. Upon the death of either, decedent's shares were to be purchased by the corporation. Upon the death of the survivor, the survivor's shares were to be sold to three key employees. The court found that intent of the parties was to ultimately vest ownership in the hands of the three employees. The agreement was silent about inter vivos transfers during the lifetime of the survivor. The survivor in that case transferred his shares to his two sons.

The Supreme Court held that the transfer violated the agreement. Two parts of the court's discus-

sion are pertinent and distinguish that case from the case at bar. The first occurs at 464 Pa. 600 and 601:

"The shareholders' restrictive agreement was expressly intended to encompass all transfers of Deiter Bros. Fuel Co., Inc., stock. Paragraph 1 states that no transfer of the corporation's shares may be made 'except as permitted by this agreement.' However, the agreement fails to provide expressly for an inter vivos transfer of shares by one stockholder and is therefore subject to more than one possible construction."

The second occurs at page 602 and reads:

"The ambiguity in the agreement must be resolved to effectuate the manifest intentions of the parties and to avoid an unreasonable and improbable result which would frustrate a primary objective of the parties."

There is no such ambiguity in this case. The agreement clearly and expressly exempts inter vivos transfers to other shareholders. Plaintiff's interpretation of Paragraph 6 would have us ignore the exemption which applies to other shareholders or to add language requiring that all such transfers be made proportionately. We cannot adopt either interpretation.

We encounter difficulty in the relief requested concerning the insurance policy. That difficulty arises from the fact that plaintiff's husband is no longer employed by the corporation. Plaintiff has alleged that this constituted oppressive conduct but she has not sought the husband's reinstatement nor has she alleged that the corporation lacked the power to terminate such employment.

Therefore, the contract is terminated by its express language. The father has the right to reacquire the life insurance policy. Plaintiff's sole

rights as relating to the policy involve payment of a share of the cash surrender value. Any remedy would be for the recovery of money damages and equitable relief would not be appropriate.

Plaintiff's action for dissolution rests on language appearing in the Business Corporation Law, 15 P.S. §2107. That section provides that courts may dissolve corporations for specified reasons, including when the acts of those in control are illegal, oppressive or fraudulent and it is in the interests of shareholders to have the corporation dissolved.

Defendants correctly point out that the dissolution of a solvent corporation is an extreme measure and is to be invoked only in extreme circumstances and with great caution. Bowman v. Gum, Inc., 321 Pa. 516, 184 Atl. 258 (1936); Tate v. Philadelphia Transportation Co., 410 Pa. 490, 190 A.2d 316 (1963); O'Farrell v. Steel City Piping Co., 266 Pa. Super. 219, 403 A.2d 1319 (1978).

We know of no Pennsylvania cases ordering the dissolution of a solvent corporation because of oppressive conduct. There is recognized, in some jurisdictions, a related action for relief other than dissolution for oppressive conduct. Masinter v. Webco Co., 262 S.E.2d 433 (Supreme Court of Appeals, West Virginia 1980).

Plaintiff has advanced the following as examples of oppressive or fraudulent conduct:

1. The transfer of her father's shares to Donald. As we have already pointed out, the father had the legal right to do this.

2. The firing of plaintiff's husband. Plaintiff has alleged nothing that would indicate that the action was improper or that the employment was related to her ownership of shares in the corporation. The agreement specifically referred to the possibility that the employment might be involuntarily termi-

nated. Plaintiff has not alleged grounds for reinstatement nor has she requested it.

3. The transfer of the insurance policy. We have pointed out that defendant has an adequate remedy at law. This would hardly be a ground, even when considered with others, for dissolution.

4. The denial of use of corporate property. In our opinion, the allegations concerning use of corporate property come closest to constituting oppressive actions. However, there are no allegations that plaintiff invested in the corporation in reliance upon a right to use such property or that the benefits derived from her ownership of stock are effectively limited to use of such corporate property. We have to realize that the normal manner in which shareholders participate in corporate wealth is through dividends. There are no allegations about dividends or other expected sharing of corporate wealth.

We are convinced that plaintiff's complaint falls far short of establishing grounds for dissolution.

In the Masinter case, supra, the West Virginia court recognized a minority shareholder's right to relief short of dissolution. The court's discussion is interesting. That case involved a close corporation in which plaintiff's sole pecuniary benefit was through employment and salary. The court held that he had established grounds for relief by showing that no dividends were ever paid, that his investment in the corporation derived benefit only through his salary, and that his employment was terminated for no proper corporate purpose.

The complaint in this case does not allege facts which would justify any equitable relief. Plaintiff may have a cause of action for unjust enrichment but does not specifically request equitable relief appropriate to facts alleged in this case.

The attached order will be entered.

## ORDER OF COURT

And now, this November 12, 1982, the preliminary objections to plaintiff's complaint are sustained. Plaintiff may file an amendment to the complaint or an amended complaint within 20 days of this order.